UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:22-cv-000189-MR

| COBEY LAKEMPER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | **ORDER** |
|  | ) |  |
| FNU HONEYCUTT, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint [Doc. 1], filed under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 2, 9].

**I.  BACKGROUND**

Pro se Plaintiff Cobey LaKemper ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina. On December 15, 2022, Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against the following Defendants, in their individual and official capacities: (1) FNU Honeycutt, Warden of Alexander; (2) FNU Young, Mailroom Attendant at Alexander; (3) Russell Chester, "FIO" Captain at Alexander; (4) Chris M. Biecker, Unit Manager, Green Unit, at Alexander; (5) William N. Farrish, Assistant Unit

Manager, Green Unit, at Alexander; and (6) John Doe, North Carolina Department of Public Safety (NCDPS)[1] Review Committee, Chairperson. [Doc. 1 at 2-4].

Plaintiff alleges, in pertinent part, as follows. In 2021, the NCDAC eliminated incoming physical mail and contracted with TextBehind, a for-profit mail processing company. Simultaneously, the NCDAC introduced GTL tablets to many facilities, which include a text messaging application through which prisoners and free citizens can correspond electronically for a per-transaction cost to both parties. This system has become "a primary communication medium." [Id. at 10].

In June 2022, Defendants Young and Chester improperly rejected six books ordered by Plaintiff through Amazon, claiming that the books had "an unknown odor and appearing to have been wet." Defendants fabricated the grounds for rejection out of retaliation for Plaintiff's previous lawsuit and to deprive Plaintiff of his First Amendment right to receive reading materials through the mail. [Doc. 1 at 6-7, 14]. Defendant Honeycutt endorsed these unlawful rejections, having processed the documents notifying Plaintiff of the rejections. [Id. at 8]. Plaintiff appealed the rejections, which were upheld by

---

[1] The NCDPS has recently been renamed the North Carolina Department of Adult Corrections (NCDAC). The Court will hereinafter refer to the NCDPS by its new name.

Defendant John Doe. Defendant Doe maintains a practice of "'rubber-stamping' the erroneous and clearly fabricated rejections," thereby "perpetuating the unlawful actions of the facility Defendants" and depriving Plaintiff of his Fourteenth Amendment due process rights. [Id. at 9].

On September 11, 2022, Defendant Biecker and Farrish improperly rejected an electronic text message from Plaintiff to one of Plaintiff's accepted contacts, J. LaKemper "for the <u>sole purpose of suppressing Plaintiff's speech</u> and not to advance any valid penological interest." [Doc. 1 at 10 (emphasis in original)]. Although the message was "disparaging" and named Defendant Chester by name, the message was not threatening and "did not include cuss words or threats." [Id.]. On September 30, 2022, Plaintiff filed a grievance against Defendants Biecker and Farrish for this improper censorship after they refused to reply to an Inmate Request Form that was submitted pursuant to informal grievance procedures. Contrary to policy, Defendant Farrish processed the grievance against himself and completed the Step One – Unit Response. After Plaintiff appealed to the next step, between October 23 and November 7, 2022, Defendant Biecker and Farrish effectively censored 13 of Plaintiff's text messages. Defendants Biecker and Farrish also directed the interception of a grievance submitted by Plaintiff against them on October 31, 2022, in which Plaintiff sought to

3

grieve retaliatory conduct following Plaintiff's September 30, 2022 grievance. [Id. at 14-15].

After "multiple methods of extraordinary complaint," Plaintiff's messages were released en mass on November 14, 2022. On November 16, 2022, Defendants Biecker and Farrish resumed their censorship of Plaintiff's incoming and outgoing electronic correspondence. Defendants Biecker deliberately suppressed Plaintiff's freedom of speech in retaliation for Plaintiff's grievances against them. [Id. at 11-13]. Defendant Honeycutt designated staff at Alexander to "review and approve electronic correspondence on the tablets." Defendant Honeycutt was also aware of and endorsed the censorship because "a grievance filed and exhausted by Plaintiff was appealed to 'Step Two' and received an 'Institutional Response' (superintendent-level response)." [Id. at 13]. Thus, Defendant Honeycutt denied relief "despite the existence of unresolved injury." [Id.].

Plaintiff purports to state three claims based on this conduct that he identifies as "Fabricated Books Rejections," "Electronic Correspondence Censorship," and Retaliation.[2] [Id. at 6-15]. Plaintiff claims "First and Fourteenth Amendment injuries." [Id. at 16]. Plaintiff seeks declaratory,

---

[2] The Court will construe these claims under the First and Fourteenth Amendments, as appropriate.

4

injunctive, and monetary relief, including punitive damages and costs. [Id.].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff's claims implicate the First and Fourteenth Amendments.

### A. Official Capacity Claims

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, as noted the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). Plaintiff's official capacity claims, therefore, do not survive initial review and will be dismissed.

## B. First Amendment

### 1. Retaliation

An inmate has a clearly established First Amendment right to be free from retaliation for filing grievances. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017). Inmates also have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them. See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018).

To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted). Retaliation claims brought by prisoners, however, are treated with skepticism because every act of discipline by a prison official is retaliatory in that it responds directly to prisoner misconduct. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Moreover, to establish liability under § 1983, a plaintiff must show that the defendants "acted personally" to cause the alleged violation. See

7

Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). As such, doctrine of respondeat superior does not apply in actions brought under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Under Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994), however, supervisory liability may attach under § 1983 if a plaintiff can establish three elements: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) and "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. 13 F.3d at 799 (citations omitted).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, the Court finds that Plaintiff's First Amendment retaliation claims against Defendants Young, Chester, Biecker, and Farrish are not clearly frivolous and survive initial review as to these Defendants in their individual capacities.

Plaintiff, however, has failed to state any claim against Defendant Honeycutt for retaliation. That is, Plaintiff alleges only that Defendant

8

Case 5:22-cv-00189-MR    Document 10    Filed 02/09/23    Page 8 of 12

Honeycutt endorsed the book rejections by Defendants Young and Chester because Honeycutt processed the documents notifying Plaintiff of the rejections. While Defendant Honeycutt may have been aware of the rejections by Young and Chester, Plaintiff does not allege that Defendant Honeycutt was aware of their retaliatory motive or that there was any causal connection between Plaintiff's protected activity and any conduct by Defendant Honeycutt. The Court, therefore, will dismiss Plaintiff's retaliation claim against Defendant Honeycutt.

### 2. Censorship

As a general matter, prisoners have the right to both send and receive mail. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989); Pell v. Procunier, 417 U.S. 817 (1974). Restrictions on this right are valid if they are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987); see Haze v. Harrison, 961 F.3d 654, 658 (4th Cir. 2020) (noting that Turner applies to both convicted prisoners and pretrial detainees). For instance, prison officials may inspect an inmate's outgoing and incoming mail because such is reasonably related to legitimate penological interests. See generally Wolff v. McDonnell, 418 U.S. 539, 575 (1974); Turner v. Safley, 482 U.S. 78, 89 (1987); see also Altizer v. Deeds, 191 F.3d 540, 547-48 (4th Cir. 1999) (opening and inspecting a prisoner's

outgoing mail is, "[w]ithout question," reasonably related to legitimate penological interests); Matherly v. Andrews, 859 F.3d 264, 281 (4th Cir. 2017) (a "necessary implication" of Altizer is that prison officials may open and inspect a prisoner's incoming mail).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, the Court finds that Plaintiff's First Amendment censorship claims against Defendants Biecker, Farrish, and Honeycutt survive initial review as not clearly frivolous.

## C. Fourteenth Amendment

Plaintiff claims that Defendant Doe violated Plaintiff's Fourteenth Amendment due process rights because Doe upheld Defendants Young and Chester's book rejections on appeal. Plaintiff also alleges that Defendant Doe has a practice of "rubber stamping" clearly fabricated rejections, perpetuating and advancing the unlawful action of the other Defendants.

Plaintiff does not have a constitutional right of access to grievance procedures. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.") (citation omitted). Moreover, because a state grievance procedure does not confer any substantive constitutional right on prison inmates, prison officials' failure to

10

comply with the state's grievance procedure is not actionable under § 1983. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898, 109 S.Ct. 242 (1988).

As such, even if it were true that Defendant Doe rubber-stamps book rejections, Plaintiff has failed to state a claim against Defendant Doe under the Fourteenth Amendment. This claim and Defendant Doe, therefore, will be dismissed.

## IV. CONCLUSION

In sum, the Complaint survives initial review under 28 U.S.C. §§ 1915A and 1915(e) as to Plaintiff's First Amendment retaliation claims against Defendants Young, Chester, Biecker, and Farrish and Plaintiff's First Amendment censorship claims against Defendants Biecker, Farrish, and Honeycutt, all in their individual capacities only, in accordance with the terms of this Order. Plaintiff's remaining claims, including Plaintiff's official capacity claims, fail initial review and will be dismissed.

## ORDER

**IT IS, THEREFORE, ORDERED** that all claims asserted in this matter as to all Defendants are hereby **DISMISSED** for failure to state a claim, except for Plaintiff's First Amendment retaliation claims against Defendants Young, Chester, Biecker, and Farrish and Plaintiff's First Amendment

censorship claims against Defendants Biecker, Farrish, and Honeycutt, which are allowed to pass initial review.

**IT IS FURTHER ORDERED** that Plaintiff's remaining claims, including Plaintiff's official capacity claims, are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant John Doe is **DISMISSED** as a Defendant in this matter.

**IT IS FURTHER ORDERED** that the Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Honeycutt, Young, Chester, Biecker, and Farrish, who are alleged to be current or former employees of NCDPS.

The Clerk is also instructed to mail Plaintiff an Opt-In/Opt-Out form pursuant to Standing Order 3:19-mc-00060-FDW.

**IT IS SO ORDERED**.

Signed: February 8, 2023

Martin Reidinger
Chief United States District Judge