IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

FILED
Statesville, NC

MAR 17 2023

Clerk, US District Court
Western District of NC

Cobey LaKemper,

Plaintiff,

v.

Civil Action No. 5:22-cv-000189-MR

FNU Honeycutt, et al.,

Defendants.

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, Cobey LaKemper, Plaintiff, pro se, pursuant to Rule 15(a), Fed. R. Civ. P., and now states:

### HISTORY

1.) On 15 December 2022, Plaintiff filed the instant lawsuit. On 9 February 2023 the Court issued an 'Order' (Doc. No. 10) allowing to proceed Plaintiff's First Amendment retaliation claims against Defendants Young, Chester, Biecker, and Farrish and Plaintiff's First Amendment censorship claims against Defendants Biecker, Farrish, and Honeycutt, in their individual capacities only. Plaintiff's Fourteenth Amendment claim against Defendant Doe and official capacity claims were dismissed, inter alia. Defendants' waivers of service are due on 10 April 2023.

2.) On or about 16 February 2023, Plaintiff filed a Rule 59(e) motion essentially seeking the following items of relief: (a.) That the Court issue an order acknowledging a "stand-alone" First Amendment censorship claim within Plaintiff's "Count One" and to reinstate Defendant

Honeycutt as a party to that claim; and, (b.) To reinstate Plaintiff's Fourteenth Amendment due process claim and Defendant Doe (Doc. No. 14). On 6 March 2023, the Court issued an 'Order' denying Plaintiff's motion in its entirety, advising that Plaintiff is free to file a timely amended complaint (Doc. No. 16).[1]

## STATEMENT OF CLAIM

### Count One: Fabricated Book Rejections

3.) On 15 June 2022, with malicious intent and by deliberately manipulating and misapplying NC DAC Publications Policy[2], Defendants Honeycutt, Young, and Chester, through combined partic-ipation and pursuant to equally substantial personal contributions, rejected the paperback books titled 'Over On The Dry Side' (Louis L'Amour) and 'Good Night, Peppa' (author unknown) mailed to Plaintiff via the publisher Amazon.

4.) On 16 June 2022, with malicious intent and by deliberately manipulating and misapplying NC DAC Publications Policy, Defendants Honeycutt, Young, and Chester, through combined participation and pursuant to equally substantial personal contributions, rejected the paperback book titled 'Ride The Dark Trail' (L'Amour) mailed to Plaintiff via the publisher Amazon.

[1] The Court did not direct the Clerk to forward new forms to Plaintiff. As such, and because Plaintiff is uninformed as to the time-frame for filing this necessary amendment and thereby defers to caution, Plaintiff submits this Amended Complaint using notebook paper and seeks to amend only the 'Statement of Claim', in its entirety and not piecemeal.

[2] NC DAC Policy and Procedure, Chapter D, Section .0109

5.) On 20 June 2022, with malicious intent and by deliberately manipulating and misapplying NC DAC Publications Policy, Defendants Honeycutt, Young, and Chester, through combined participation and pursuant to equally substantial personal contributions, rejected the paperback book titled 'Without Fail' (Lee Child) mailed to Plaintiff via the publisher Amazon.

6.) On 22 June 2022, with malicious intent and by deliberately manipulating and misapplying NC DAC Publications Policy, Defendants Honeycutt, Young, and Chester, through combined participation and pursuant to equally substantial personal contributions, rejected the paperback books titled 'The Sacketts' (L'Amour) and 'Persuader' (Child) mailed to Plaintiff via the publisher Amazon.[3]

7.) With malicious intent and in an effort to impose excessive censorship, the Defendants deviously cited "Reason Q" as the basis for all six (6) of the individual rejection incidents, accompanied by the fabricated statement, "Due to having an unknown odor and appearing to have been wet",[4] both nefarious misrepresentations purely invented by the Defendants in addition to being distortions of and unauthorized deviations from established NC DAC Policy, for "Reason Q"[5] is not relevant to the fabricated reasons cited by the Defendants and in no way encompasses a publication allegedly "appearing to have been wet" at some time or possessing an "unknown odor." NC DAC Publications Policy (.0109) authorizes seventeen (17) very specific "Reasons" and literally dozens of additional subreasons why a publication

---

[3] The books were shipped separately by Amazon, resulting in four (4) different disapproval dates.

[4] It was never alleged by the Defendants that wrongdoing by Plaintiff was a factor contributing to the six (6) rejections, for had it been the Defendants would have cited "Reason C", which involves the illicit introduction of "... drugs, intoxicants ... or other toxic or illegal substances" via publications.

[5] NC DAC Policy, Chapter D, Section .0109 "Reason Q" states: "Publication contains contraband, such as money, postal stamps or objects that may be utilized as weapons."

may be rejected, and does _not_ include reasons invented by the Defendants. The malicious and deceptive rejections of Plaintiff's books was _intended solely to deprive_ Plaintiff of his First Amendment right to receive publications via mail _and_ to be retaliatory,[6] and not to satisfy any otherwise valid penological interest.

8.) Upon information and belief, _Defendant Chester_ expressly directed Defendant Young to reject Plaintiff's books in a malicious and calculated effort to harass, deprive Plaintiff of access to stimulating reading material, and retaliate against Plaintiff for prior litigation against him,[7] thereby knowingly committing an intentional deprivation of civil rights and bad act under color of law. Upon information and belief, _Defendant Young_ initiated execution of the rejection process aware of its fraudulent nature,[8] per Defendant Chester's improper and unauthorized directive, thereby committing an intentional deprivation of civil rights and bad act under color of law. Upon information

---

[6] In an effort to preserve evidence and demonstrate at trial that all six (6) book rejections were _in fact fabricated and thereby vindictive_, Plaintiff's recipient-family kept sealed the package mailed by Defendant Young containing Plaintiff's books.

[7] In a disturbingly similar case, immediately after filing a grievance against Defendant Chester in 2017 he responded by directing former mailroom staff to forward to him all of Plaintiff's mail, which Chester then destroyed or tampered with unlawfully. On _27 March 2019_, a court order denied Defendant Chester's summary judgment motion on two counts, including "Retaliation", and referred to his conduct as "reprehensible" (5:17-CV-00073, WDNC, Doc. 93, p.16).

[8] In an active effort to _conceal bad acts and deprive Plaintiff of evidentiary material_, Defendant Young refused to provide Plaintiff's Amazon book receipts, shipping information, etc, and violated _Policy, Chapter D, Section .0103(c)_ by refusing to provide the "inmate copy" of the rejection forms.

and belief, _Defendant Honeycutt_ actively endorsed the unlawful rejections and finalized execution of the administrative processes, thereby knowingly committing an intentional deprivation of civil rights and bad act under color of law. According to the instructive provisions of Policy[9], Defendant's Young and Honeycutt were _both tasked with separate phases of rejection procedures_, and while Defendant Young's initial contributions were alone insufficient to effectuate disapproval, Defendant Honeycutt effectively "rubber-stamps" Defendant Young's referrals as a matter of course _regardless of illegitimacy or rank impropriety_. Defendant Chester's maliciously-motivated participation was not policy authorized.

9.) Pursuant to the provisions of NC DAC Policy and Procedure[10], Plaintiff has a _state-created liberty interest_ in receiving literature via mail,[11] in addition to the rights afforded by the US Constitution. Plaintiff respectfully challenges the foregoing deprivations of rights, deliberately imposed by the aforecited Defendants, as both a First Amendment _stand-alone 'Right to Receive Publications Via Mail' censorship_ claim and '_Retaliation_' claim.

---

[9] Per NC DAC Policy and Procedure, _Chapter D, Section .0102_, Defendant Young is engaged solely in "initial" rejection stages, while _Defendant Honeycutt_ is specifically responsible for "disapproving receipt or possession of a publication" (.0102(a)), to "approve or disapprove" (.0102(b)), and for "submitting disapproved publications and the completed Disapproved Publication Log" to the Chairperson, Defendant Doe (.0102(c)).

[10] NC DAC Policy and Procedure, _Chapter D, Section .0101(a)_

[11] The only method available to Alexander prisoners to obtain _specific titles and authors_ of books is to order via the publisher, for prisoners are strictly prohibited from physically accessing the library. While "slips" can be submitted periodically, the receipt of books is restricted and effectively limited to genre's to be chosen by another inmate who inevitably projects his own interests, prejudice, IQ, etc.

Due Process

10.) Plaintiff appealed _all six (6) individual book rejections_ to the Publication Review Committee. After the 45 day time-frame for receiving appeal-decisions expired,[12] Plaintiff sent an 'Inmate Request Form' to Defendant Young inquiring of the status of the overdue appeals, which Defendant Young improperly ignored despite the appeal-decisions having been _issued several weeks prior_ on 13 July 2022 and 4 August 2022, it was later discovered. After seeking the authoritative assistance of another Alexander employee on _12 September 2022_ the appeal-decisions were provided to Plaintiff,[13] revealing that the PRC chairperson, Defendant Doe, upheld the fabricated rejections.

11.) Upon information and belief, _Defendant Doe maintains a matter of course, deliberately indolent practice of "rubber-stamping" the erroneous and clearly fabricated rejections_[14] issued by improperly motivated facility actors, thereby enabling, expressly condoning, colluding with, actively advancing, and injuriously perpetuating the unlawful actions of the facility Defendants. Defendant Doe's acts and omissions, _in violation of 'Publications Policy',_ render superficial, inoperable, and wholly meaningless all policy-intended due process and meaningful review of the facility Defendants excessive censorship activity. Defendant Doe knowingly and intentionally deprived Plaintiff

[12] NC DAC Policy and Procedure, _Chapter D, Section .0105(d)_

[13] In a continued effort to suppress documentary evidence, Defendant Young additionally refused to provide Plaintiff with the "inmate copy" of the PRC appeal-decisions. Plaintiff had to return the "mailroom copy" received on _12 September 2022_ to the mailroom in order to convey the desire to mail home the books and thereby prevent them from being destroyed by the Defendants.

[14] The unconstitutional "rubber-stamping" by Defendant Doe and the PRC is presently being litigated in several civil actions, including _Human Rights Defense Center_ v. _Hoekstra,_ 4:21-cv-00170 (EDNC).

of Fourteenth Amendment due process rights under color of law.

12.) Pursuant to the provisions of NC DAC Policy and Procedure, Plaintiff has a state-created liberty interest in receiving meaningful due process as to rejected publications,[15] in addition to the rights afforded by the US Constitution.

13.) In addition to an irreparable First Amendment injury and Fourteenth Amendment injury, Plaintiff has suffered a monetary injury due to the acts and omissions of the Defendants.

Count Two: Electronic Correspondence Censorship[16]

14.) On 11 September 2022, Defendant's Biecker and Farrish improperly censored an electronic text message Plaintiff composed and attempted to send to his established contact, J. LeKemper, for the sole purpose of suppressing Plaintiff's speech and not to advance any penological interest. Among other unrelated family-oriented content, Plaintiff's censored text message contained un-flattering information and opinions about Defendant Chester. Plaintiff composed the censored correspondence while emotionally impacted and feeling bullied by Defendant Chester in response to being effectively precluded from obtaining a sufficiency of stimulating reading material for several

---

[15] Per NC DAC Policy and Procedure, Chapter D, Section .0104, Defendant Doe is obligated to issue appeal-decisions that are "consistent with" and "ensure compliance with...policy."

[16] Simultaneous to DAC eliminating incoming physical mail in 2021 and contracting with the for-profit mail processing business TextBehind, DAC introduced GTL tablets to many facilities which include a text messaging application whereby prisoners and free citizens can correspond electronically for a per-transaction cost to both parties. It has become a primary communication medium.

months,[17] and Plaintiff reminded his party that Defendant Chester is one of the two corrupt subjects referred to by a pseudonym in the non-fiction essay authored by Plaintiff then published online in 2019 by the American Prison Writing Archive ("APWA"). Plaintiff's language in the censored message, albeit disparaging, did _not include cusswords or threats or any content which posed a risk to security._ Plaintiff correctly referred to Defendant Chester as his "future and former defendant," and resignedly stated that Plaintiff was "naive" to think that Defendant Chester would conduct himself different than before following Plaintiff's reassignment to Alexander in _March 2022._

15) Beginning on _23 October 2022_, Defendant's Biecker and Farrish responded to a grievance filed against them by maliciously and as a matter of course censoring all incoming/outgoing electronic correspondence sent to and by Plaintiff that were delayed by the word-triggered algorithm[18] function. On _30 September 2022_, Plaintiff filed a grievance against Defendant's Biecker and Farrish ("Green Unit Management") concerning the improperly censored text of _11 September 2022_ after they refused to reply to an 'Inmate Request Form' submitted pursuant to the "informal" resolution provisions of 'Administrative Remedy Procedures'. Then, in belligerent violation of DAC Policy,[19] Defendant Farrish processed the grievance _filed against him_ and inappropriately completed the 'Step One-Unit Response' on _17 October 2022._ After Plaintiff rejected Defendant Farrish's unsanctioned response and appealed to the next step, Defendant's Biecker and Farrish responded by censoring, in effect, every algorithm-delayed message by _actively electing not to approve them_ for forwarding to Plaintiff's

---

[17] The value of reading material is greatly enhanced by Alexander prisoners being on _22.5 hour per day lockdown._

[18] According to upper-management, when the ultra-sensitive algorithm delays sending a message to an intended recipient, the message is then forwarded to Unit Management for review and approval, where "over 95% of delayed messages are approved the next day" and were triggered by innocuous words or phrases or numbers.

[19] NC DAC Policy and Procedure, Chapter G, Section .0305

family. Between 23 October 2022 and 7 November 2022, Defendant's Biecker and Farrish, with malice and retaliatory intent, effectively censored approximately thirteen (13) text messages, none of which contained cusswords or threats or language which could be perceived as posing a [20] security risk. On 28 October 2022 when questioned about censored texts and particularly the censored message of 11 September 2022 regarding Defendant Chester's harassment and targeting of Plaintiff, Defendant Biecker advised that Plaintiff is prohibited from using a correctional employee's name in electronic correspondence and denounced such speech as being an alleged "security risk." When many of the effectively censored text messages were eventually forwarded to Plaintiff and Plaintiff's parties en masse on 14 November 2022 following multiple methods of extraordinary complaint, they were by then severly outdated, rendered meaningless, and had lost their substantive value.[21] Shortly thereafter, in an effort to additionally suppress and bully in response to Plaintiff's good-faith deployment of 'Administrative Remedy Procedures', on or about 16 November 2022 Defendant's Biecker and Farrish instantly resumed effective censorship of all incoming and outgoing algorithm-delayed electronic correspondence by deliberately opting not to approve them for forwarding as a matter of course, and to date have maintained this malic-ious, unauthorized, and retaliatory practice indefinitely, thereby resulting in numerous and endless incidents of improperly censoring communication with family.

16.) Prior to Plaintiff's grievance against Defendant's Biecker and Farrish and their retaliatory imposition of routine censorship beginning on 23 October 2022, all incoming and outgoing algorithm-delayed electronic correspondence was promptly approved and forwarded to Plaintiff or Plaintiff's intended-recipient within hours the same day or at-latest the following business

---

[20] Plaintiff has never been accused of sending threatening texts or received a tablet-related infraction.

[21] The text message of 11 September 2022, inter alia, remains censored by the Defendants.

day, excepting solely the censored message of 11 September 2022.

17.) Defendants' Biecker and Farrish's deliberate suppression of Plaintiff's permissible speech on 11 September 2022, followed by malicious and retaliatory routine suppression of Plaintiff's permissible speech and that of Plaintiff's family beginning on 23 October 2022 as calculated punishment for the grievance filed against them on 30 September 2022, are egregious and belligerent violations of Plaintiff's First Amendment rights. Defendant's Biecker and Farrish knowingly committed intentional deprivations of civil rights and bad acts under color of law.

18.) Defendant Honeycutt's acts and omissions injuriously contributed to the malicious and retaliatory censorship of Plaintiff's speech, for according to the DAC-authoritative 'Grievance Resolution Board' in a 'Step Three' response on 31 October 2022, Defendant Honeycutt is responsible for designating staff at Alexander to "review and approve electronic correspondence on the tablets," and designated the above-cited Defendants who improperly and with malicious-motivations censored Plaintiff's electronic correspondence on numerous occasions. Furthermore, upon information and belief Defendant Honeycutt is aware of and endorsed the censorship, for a grievance filed and exhausted by Plaintiff was appealed to 'Step Two' and received an "Institutional Response" (superintendent-level response), therein denying all relief despite the existence of unresolved injury. Defendant Honeycutt deliberately violated Plaintiff's First Amendment rights, thereby knowingly committing an intentional deprivation and bad act under color of law.

19.) Pursuant to the provisions of NC DAC Policy and Procedure; Plaintiff has a state-created liberty interest in corresponding with family, timely and free of unreasonable censorship; and, not being subjected to "Reprisals" for employing 'Administrative Remedy Procedures',[22] in addition to the rights guaranteed by the

---

[22]
NC DAC Policy and Procedure, Chapter G, Section .0303

US Constitution. As such, Plaintiff respectfully challenges the foregoing deprivation of rights, deliberately imposed by the aforecited Defendants, as violations of the Free Speech Clause of the First Amendment and Plaintiff's First Amendment right to be free of retaliation for engaging in protected conduct.

20.) In addition to an irreparable First Amendment injury, Plaintiff has suffered a monetary injury due to the acts and omissions of the Defendants, for both Plaintiff and his parties must purchase a GTL "App Bundle" or pay per-minute in order to send and receive electronic correspondence and have suffered numerous incidents of wasted usage due to the unlawful censorship.

Count Three: Retaliation

21.) Defendant Chester, upon information and belief, retaliated against Plaintiff as punishment for accessing the court in a civil rights action against him settled in the recent past on 26 October 2020, by deploying his hierarchical authority at Alexander to direct suppression of Plaintiff's constitutional rights with purely vindictive motivations. Furthermore, in response to a grievance filed in part against Defendant Chester concerning his directing participation in the fabricated rejection of Plaintiff's books and devious manipulation of 'Publications Policy', on 8 November 2022 Defendant Chester issued a written 'Step One' response statement, retaliatory in nature, essentially threatening Plaintiff with disciplinary action for the content of Plaintiff's appropriate and Policy-compliant grievance against him.[23]

22.) Defendant's Biecker and Farrish, upon information and belief, maliciously punished Plaintiff for a grievance filed against them after Plaintiff courteously tried first to employ "informal" communications,

---

[23] Per NC DAC Policy and Procedure, Chapter G, Section's .0305 + .0306, this grievance was reviewed by a "Screening Officer" and accepted prior to being processed.

as per the instructions of Policy[24], to resolve the unwarranted censorship. The actions of Defendant's Biecker and Farrish were intended for the sole purpose of punishing Plaintiff for engaging in free speech and employing 'Administrative Remedy Procedures'. In an additional effort to deprive Plaintiff of the ability to deploy grievance procedures free of obstruction, Defendant's Biecker and Farrish, upon information and belief, directed interception of a grievance submitted against them on 31 October 2022 attempting therein to grieve their retaliatory conduct following Plaintiff's grievance of 30 September 2022; then upon resubmitting on 6 November 2022 Defendant Farrish again belligerently violated the non-discretionary provisions[25] of 'Administrative Remedy Procedures' by completing 'Step One' (investigative-level response) instead of properly forwarding the grievance to another party for processing, as per NC DAC procedure, thereby repeatedly obstructing grievance procedures with suppressing and retaliatory motivations.

23.) Defendants' Honeycutt and Young's participation in and contributions to the retaliation, in their respective roles and according to their significant acts and omissions, were both substantial and vital to sustaining its malignant course and injurious manifestation.

Individual And Official Capacity Defendants

24.) All Defendants are being sued in both their individual and official capacities. Upon information and belief, the Defendant's are basing their acts and omissions, however improper and flagrant, on overly broad and unconstitutional NC DAC policies, and therefore correctional policy must be considered the driving force behind the Defendants egregious conduct and

---

[24] NC DAC Policy and Procedure, Chapter G, Section .0301(a)

[25] NC DAC Policy and Procedure, Chapter G, Section .0305

resulting deprivation of Plaintiff's constitutional rights.

Relief

25.) Wherefore, Plaintiff hereby requests the following relief: (a.) A declaration that Defendants' policies and practices violate the Constitution; (b.) A permanent injunction preventing Defendants' from continuing to violate the Constitution, and providing other equitable relief; (c.) Compensatory damages in an amount to be proved at trial; (d.) Punitive damages against the individual Defendants' in an amount to be proved at trial; (e.) An award of costs arising from litigation; and, (f.) Any additional relief this Court deems appropriate.

Date: 14 March 2023

Cobey LaKemper
633 Old Landfill Road
Taylorsville, NC 28681

I, Cobey LaKemper, do hereby swear under penalty of perjury and attest to the foregoing statements being true and correct to the best of my knowledge and belief on this 14 day of March, 2023.

Cobey LaKemper
Plaintiff