# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:22-cv-00189-MR

| | |
|---|---|
| COBEY LAKEMPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| RONNIE LANE HUNEYCUTT, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on Plaintiff's "Motion for an Order Compelling Discovery." [Doc. 52].

## I. BACKGROUND

Pro se Plaintiff Cobey LaKemper ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina. On December 15, 2022, Plaintiff filed this action pursuant to 42 U.S.C. § 1983. [Doc. 1]. Plaintiff has twice amended his Complaint. [Docs. 17, 47]. Plaintiff now proceeds in this action on his First Amendment retaliation claims against Defendants FNU Young and Russell Chester; his First Amendment censorship claims against Defendants Ronnie Lane Huneycutt, Young, Chester, David Hollar, Timothy Metcalf, and Stephanie Hall; his Fourteenth Amendment due process claim

against Defendant Christina Mingo Fox; and his official capacity claims against Defendants Huneycutt, Hollar, Metcalf, and Hall. [Doc. 48]. In pertinent part, Plaintiff alleges that in June 2022 Defendants Young and Chester improperly rejected six books Plaintiff ordered through Amazon, claiming that the books had "an unknown odor and appearing to have been wet." Plaintiff alleges that these Defendants fabricated the grounds for rejection out of retaliation for Plaintiff's previous lawsuits and to deprive Plaintiff of his First Amendment right to receive reading materials through the mail. [Doc. 1 at 6-7, 14]. Plaintiff also alleges that, on or about September 11, 2022, and/or August 24 and 25, 2023, Defendants Hollar, Metcalf, and Hall improperly censored electronic messages sent by Plaintiff. [Id. at 10, Doc. 28 at 1-2; Doc. 47 at 6-7].

The discovery deadline in this case expired on April 19, 2024, and the parties have until September 12, 2024 to file dispositive motions. [Doc. 46; 4/15/2024 Text Order].

On April 19, 2024, Plaintiff filed the pending motion to compel. [Doc. 52]. Plaintiff seeks an order compelling Defendants to respond to one interrogatory, four requests for production, and nine requests for admission he propounded in his November 8, 2023 and December 4, 2023 discovery requests. [Id. at 1]. As grounds for his motion, Plaintiff generally contends

2

that Defendants' answers to these requests are "evasive" and their objections "baseless." [Id.]. Plaintiff states that he satisfied Rule 37(a)(1)'s certification requirement by calling defense counsel once on March 28, 2024, "whereupon [counsel] declined to discuss the insufficient responses and outright rejected Plaintiff's compromising-suggestion," and thereafter sending defense counsel a letter "identifying within the 'responses' needing corrected." [Id. at 6]. In this letter, Plaintiff did not identify the supposed insufficiencies, writing only that "[t]heir insufficiency speaks for themselves." [Doc. 53-1 at 1]. Defense counsel responded to Plaintiff's letter, advising that he did not believe Plaintiff had complied with his "meet and confer obligation by merely claiming that the discovery responses were 'insufficient'" and maintaining and further explaining Defendants' objections to the subject requests. [Id. at 1].

Defendants responded to Plaintiff's motion to compel. [Doc. 53] Plaintiff has not filed a reply. Accordingly, Plaintiff's motion is ripe for disposition.

## II. STANDARD OF REVIEW

Rule 26 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

3

> claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Under Rule 37 of the Federal Rules of Civil Procedure, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The party moving to compel discovery must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to make the discovery. Fed. R. Civ. P. 37(a)(1).

"[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 243 (M.D.N.C. 2010). The decision to grant or deny a motion to compel is generally an issue within the broad discretion of the trial court. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995).

### III. DISCUSSION

As a threshold matter, as noted, Defendants contend that Plaintiff failed to comply with Rule 37's "meet and confer" requirement because, in

his meet and confer letter to defense counsel regarding the disputed discovery responses, Plaintiff fails to explain how he contends such responses are "insufficient." [Doc. 53 at 4-5; Doc. 53-1 at 1]. In support of this argument, Defendants rely on cases that relate not to a meet and confer attempt by the moving party, but to the requirements of a motion to compel following an unsuccessful meet and confer attempt. [See Doc. 53 at 4-5 (citations omitted)]. The Court, therefore, disregards them. Moreover, it is clear from defense counsel's letter responsive to Plaintiff's meet and confer letter that counsel understood the nature of Plaintiff's complaints with the identified discovery responses. [See Doc. 53-2]. Given Plaintiff's pro se status and his multiple attempts to confer and resolve the discovery dispute before filing the instant motion, the Court finds that he satisfied the certification requirement of Rule 37(a)(1).

By the instant motion, Plaintiff seeks to compel: (1) the "precise[ ]" number of [North Carolina Department of Adult Corrections (NCDAC)] employees found by "SRG/FIO"[1] staff to have introduced illicit substances into Alexander in 2022 for the purpose of providing to prisoners; (2) an admission that the introduction of such illicit substances by NCDAC

---

[1] Although Plaintiff fails to define this term, SRG likely refers to Security Risk Group and FIO to Facility Intelligence Officer.

employee(s) occurred in 2022; (3) an admission that an Alexander employee was criminally charged for introducing such illicit substances into Alexander; (4) an admission that intelligence permitted Alexander staff "to become aware prior to receipt by mailroom staff that material sent via mail to a prisoner-receipt contained contraband concealed within;" (5) e-mails exchanged between Defendants and any other NCDAC employee regarding "Plaintiff's disapproved books, censored electronic correspondence, and employment of grievance procedures and/or in any way material to or referencing this civil action;" (6) prison policy in 2022 regarding "offender out-of-cell 'rotation' procedures and frequency," "offender library access procedures and frequency," and "outdoor recreation procedures and frequency;" and (7) various admissions regarding out-of-cell time, library and specific book access and procedure, and outdoor recreation. [Docs. 52, 52-1]. The Court will address these requests in turn.

### A. Introduction of Illicit Substances by NCDAC Employees

Plaintiff seeks admissions that, in 2022, an investigation by Alexander SRG/FIO staff found that NCDAC employees introduced illicit substances into Alexander for the purpose of providing to prisoners; that at least one Alexander employee was criminally charged for such introduction; and that intelligence gained by Alexander SRG/FIO staff allowed Alexander staff "to

become aware prior to receipt by mailroom staff that materials sent via mail to a prisoner-receipt contained contraband concealed within." [Doc. 52-1 at 41-42 (RFAs 27-30)]. Plaintiff also seeks to compel the "precise[ ]" number of NCDAC employees found by said investigation to have introduced such illicit substances into Alexander in 2022. [Id. at 15 (Interrogatory 33)].

Defendants objected to these requests as overly broad; seeking potentially confidential information about employee personnel files, facility security, and/or ongoing investigations; and disproportionate to the needs of the lawsuit. Defendants also responded that the need for confidentiality outweighs Plaintiff's need for the requested information and, subject to these objections, Defendant Chester nonetheless "is currently unable to provide a number." [Doc. 52-1 at 15].

Plaintiff argues that this "is an evasive nonanswer." [Doc. 52 at 2]. Plaintiff argues that he is entitled to this information because "Defendants' [*sic*] have wildly suggested that the pages within were invisibly infused with an illicit substance, apparently by <u>unknown but complicit Amazon associates</u> – an incredible fabrication" and that he intends to prove at trial that prisoners need not resort to such "hi-tech infusions" because "corrupt prison staff are readily available and less-expensive and all too willing to introduce contraband." [Id. at 2].

In response, Defendants argue that Plaintiff's request is overly broad and irrelevant because this case is about whether Plaintiff's books were improperly rejected, not about NCDAC employees' introduction of contraband into the facility. Moreover, because Defendants have a legitimate penological interest in preventing the introduction of all contraband into the facility, whether contraband is introduced through corrupt staff is irrelevant to this case. [Doc. 53 at 6]. Defendants also argue that the request seeks "highly confidential information," and that Plaintiff can establish through witness testimony at trial that contraband can be introduced to the prison through other means. [Id. at 7]. Finally, Defendants argue that the interrogatory was directed at an individual Defendant, Defendant Chester, "who is permitted to plead lack of memory." [Id. (citation omitted)].

The Court will deny Plaintiff's motion to compel as to these requests. This confidential information is very unlikely to resolve any issues in this case and the Court will not require Defendants to provide it given the relative importance of the issues at stake, the amount in controversy, and Plaintiff's ability to elicit testimony at trial regarding the results of such investigation. See Fed. R. Civ. P. 26(b)(1).

## B. E-mails

Plaintiff seeks to compel the production of any non-privileged e-mails or other electronic correspondence between Defendants and any other DAC employee(s) regarding Plaintiff's disapproved books, censored electronic correspondence, and employment of grievance procedures and/or "in any way material to or referencing this civil action." [Doc. 52 at 2; Doc. 52-1 at 32 (RFP 26)].

Defendants objected to this request as unduly burdensome, disproportionate to the needs of this lawsuit and stakes involved, and vague and ambiguous as to the language "in any way material to or referencing this civil action." [Doc. 52-1 at 32].

Plaintiff argues that he has been informed by three Alexander prison officials, including Defendant Young and two "high-ranking" nonparties that internal emails concerning Plaintiff's rejected books were exchanged by "at minimum" Defendants Young and Chester and two other officials and that these emails contain "express references to the malicious and unauthorized motivations of Defendant's [*sic*] Young and Chester." [Doc. 52 at 2].

Defendants respond that it is unduly burdensome to perform email searches in every prisoner case because there are hundreds of prisoner cases filed against NCDAC employees every year and undertaking such

9

searches and the review of such search results is "simply not feasible or necessary." [Doc. 53 at 8]. Defendants further argue that there "is a low likelihood that there are any emails that will bolster" Plaintiff's claims that his books were improperly rejected or whether his electronic messages were improperly censored. [Id. at 9]. Defendants also take issue with the "broad terms" of Plaintiff's request in that he fails to specify a date range or the substance of the correspondence sought, which is particularly problematic given the vague categories of "censored electronic correspondence" and "grievance procedures." [Id.]. Defendants are also skeptical that email correspondence between Defendants Young and Chester containing references to their "malicious and unauthorized motivations" exist, as Plaintiff now claims, making the undertaking of such search and review even more burdensome. [Id. at 10]. Defendants argue that, for all these reasons, Plaintiff's request is disproportionate to the needs of the lawsuit and the stakes involved. [Id.].

The Court will grant Plaintiff's motion in part. While an undefined, temporally unlimited search and production of e-mails, as requested by Plaintiff, is overly burdensome and disproportionate to the stakes involved in this lawsuit, the Court will grant Plaintiff's motion on this request in part and order Defendants to produce any emails written by or to Defendant Young

or Defendant Chester in June and July 2022 referencing the Plaintiff by name or his OPUS number (0767480) and related to or regarding the rejection of Plaintiff's books.  The Court will deny Plaintiff's request to the extent it seeks the production of emails outside these parameters.

### C. Prison Policies and Admissions regarding Out-of-Cell Time, Library Access, and Outdoor Recreation

Plaintiff seeks production of prison operations policy for 2022 regarding offender out-of-cell time, library access, and outdoor recreation.  [Doc. 52-1 at 32-33 (Requests for Production 27-29)].  Similarly, Plaintiff seeks admissions regarding out-of-cell time, library access and procedure, and outdoor recreation.  [Id. at 39-40 (Requests for Admission 20-23)].  Plaintiff also asks Defendants to make various admissions regarding Plaintiff's submission of an Inmate Request Form to a non-defendant about Plaintiff's library access.  [Id. at 47 (Request for Admission 50)].

Defendants objected to the requests for production as overly broad and outside the scope of discovery, noting that Plaintiff's surviving claims involve allegedly censored messages and disapproved books.  Defendants also object to these requests as unduly burdensome, disproportionate to the needs of the case and stakes involved, and to the extent they are being used for an improper purpose.  Defendants also object to the term "offender out of cell rotation" as vague and ambiguous.  [Id.; see Doc. 53 at 11-12].

11

Defendants objected to the requests for admission as overly broad, outside the scope of discovery, intended for an improper purpose, and intended to embarrass, harass, and annoy Defendants, and to Request for Admission 50 regarding the Inmate Request Form as disproportionate to the needs of the case. [Doc. 52-1 at 39-40, 47].

Plaintiff argues that the policies are relevant because Plaintiff intends to prove at trial "the enhanced importance and absolute necessity of receiving reading material via mail" given that inmates are afforded only minimal opportunities for out-of-cell time, prohibited from "physically accessing" the library, and limited to one hour of outdoor recreation per week. [Doc. 52 at 3]. As to RFAs 20 to 23 and 50, Plaintiff states only that, because prisoners at Alexander are prohibited from physically accessing the library, restricted to their cells 22.5 hours per day, and limited to one hour of outdoor recreation per week, "the importance and absolute necessity of receiving reading material via mail" is "greatly enhance[ed]." [Doc. 52 at 3-5].

The Court will deny Plaintiff's motion to compel relative to these requests. While these policies may be relevant to Plaintiff's need for outside reading materials, they are not at all relevant to Defendants' alleged conduct here. The requests are also, at minimum, unduly burdensome and

disproportionate to the needs of the case and stakes involved.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for an Order Compelling Discovery [Doc. 52] is **GRANTED IN PART** and **DENIED IN PART** in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that Defendants shall **SUPPLEMENT** their response to Plaintiff's Request for Production No. 26 in accordance with the terms of this Order within fourteen (14) days of this Order.

**IT IS SO ORDERED**.

Signed: May 25, 2024

Martin Reidinger
Chief United States District Judge